ORDERED in the Southern District of Florida on __11-06-07__.



_Raymond B. Ray, Judge_
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| IN RE: | CASE NO. 05-22912-BKC-RBR |
| CERTIFIED HR SERVICES CO., | CHAPTER 11 |
| Debtor. _____/ | |
| JAMES S. FELTMAN, Trustee | |
| Plaintiff, | |
| vs. | ADV. NO. 07-1274-BKC-RBR-A |
| LLRG, LP, d/b/a LL ROBERTS GROUP, | |
| Defendant. _____/ | |

## ORDER DENYING MOTION TO COMPEL ARBITRATION

THIS MATTER came before the Court on August 24, 2007 upon the *Motion to Compel Arbitration* [D.E. 10] and the response thereto [D.E.20]. At the hearing the Court listened to legal argument from counsel and requested post hearing submissions [D.E 27 and 28]. Having reviewed the file, the motion, the response, the post trial submissions, the relevant case law and considered the arguments of counsel the Court makes the following determinations.

### Factual Background

Page 1 of 7

On May 12, 2005 the Debtor and its related companies filed for bankruptcy protection. Upon motions by interested parties the Court authorized the appointed of a chapter 11 trustee. Mr. Feltman was appointed as trustee of the chapter 11 estate. The Debtor and its related companies were engaged in the Professional Employer Organization ("PEO") business. A PEO provides services to its clients by becoming a co-employer of its clients employees. Under this arrangement, employment related liabilities are contractually allocated between the PEO and the client. Generally, the PEO assumes responsibility for and manages the risks associated with, workers compensation insurance for work-site employees.

The Defendant, LLRG, acted as a broker for the Debtor. LLRG would place and maintain its clients with the Debtor. In return for the clients, the Debtor would pay LLRG a commission. The Debtor would then provide PEO services to the clients LLRG passed onto the Debtor. During the pendency of the bankruptcy the Trustee filed an adversary proceeding against LLRG seeking to recover payments as either preferences or fraudulent transfers. LLRG filed its motion to compel arbitration.

LLRG's motion [D.E. 10] asserts that it entered into an Independent Sales Organization Agreement (the "Contract") with American Staff Resources Corporation ("ASR"). The Contract contains the following clause:

> The parties agree that they will use their best efforts to amicably resolve any dispute arising out of related to this Agreement. Any controversy, claim or dispute that cannot be so resolved shall be settled by final binding arbitration in accordance with the rules of the American Arbitration Association and judgment upon the awards rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. [D.E. 10, Exhibit A at 6].

LLRG seeks to compel the Trustee to arbitrate all of the claims in the adversary by virtue of the arbitration clause in the Contract.

### Conclusions of Law

The leading Eleventh Circuit case on the enforceability of arbitration clauses in the bankruptcy context is *Whiting-Turner Contracting Co v. Elec. Mach, Inc.,(In re Elec. Mach. Enter., Inc.,)*, 479 F.3d

791 (11th Cir. 2007). In that case Whiting-Turner, as a general contractor for a construction project, hired the debtor, Electric Machinery, to provide electrical work. *Whiting-Turner*, 479 F.3d. at 794. The project ran into some delays and associated cost overruns. *Id.* Electric Machinery and Whiting-Turner entered into an agreement, which among other things, provided that any issues among them would be arbitrated. *Id.* When Electric Machinery filed for bankruptcy it alleged that it was still owed a substantial sum of money from the contract. *Id.* Whiting-Turner moved to compel arbitration of the dispute before the bankruptcy court. *Whiting-Turner*, 479 F.3d. at 795.

The Eleventh Circuit applied the following analysis to determine if arbitration must be compelled. First, it examined whether the parties "entered into a valid arbitration agreement to resolve any and all claims or issues between them." *Whiting-Turner*, 479 F.3d. at 795. In the *Whiting-Turner* case this first prong was not disputed. *Id.* If the first prong is met, then the party opposing arbitration has the burden to prove "that Congress intended to preclude a waiver of a judicial remedies for [the particular claim] at issue." *Whiting-Turner*, 479 F.3d. at 795 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

This second prong mandates that Congressional intent be examined according to three factors: "(1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes [of the statute] exists." *Whiting-Turner*, 479 F.3d. at 796 (citations and internal quotations omitted). The Eleventh Circuit further held that they find "no evidence within the text or in the legislative history that Congress intended to create an exception to the [Federal Arbitration Act] in the Bankruptcy Code." *Id.* Therefore, the only factor which remains applicable, in the bankruptcy context, is whether an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code exists.

As such, the inquiry in this case can be narrowed to the following two questions: (1) is the

Contract enforceable between the Trustee and LLRG? (2) If it is enforceable, does compelling arbitration in this case inherently conflict with the underlying purposes of the bankruptcy code?

Is the Agreement Enforceable?

At the outset the Court makes the following observation on the respective burdens of each party. According to the Eleventh Circuit, the party opposing arbitration has the burden of establishing one of the *McMahon* factors. *See Whiting-Turner*, 479 F.3d. at 795. However, implicit in its analysis is that the original burden to establish a valid and binding arbitration agreement between the parties rests squarely upon the party seeking to enforce the arbitration provision. Only once the validity of the agreement is established does the burden shift to the opposing party under the second step.

Assuming the Contract to be valid between LLRG and ASR, the peculiar facts of this case present a novel issue. Namely, is the Chapter 11 Trustee bound by a contract which he did not sign and which the Debtor did not sign, but which was signed by a related or affiliated company of the Debtor. LLRG asserts that ASR was acquired by the Debtor and became a wholly owned subsidiary of the Debtor and consequently the Debtor became subject to the arbitration clause. LLRG further reasons that if the Debtor is subject to the Contract then the Trustee is also subject to the Contract, because he is standing in the shoes of the Debtor. [D.E 10 at 3]. The Trustee response argues that the Debtor was never a party to the agreement and never assumed the rights and responsibilities of the agreement.

At this point it is prudent to establish the hierarchical nature of the Debtor and the related companies. At the top of the pyramid sits Certified Services Inc. Occupying the entire step below is Certified HR Holdings, Inc. On the step below Certified Holdings are several entities including ASR Acquisition Inc., and Certified HR Services Company (the original debtor). A subsidiary of ASR Acquisition Inc., is ASR. Therefore, before the bankruptcy, Certified HR Services Company was related to ASR only because ASR's parent company (ASR Acquisition) was also owned by Certified HR

Holdings Inc.

The analysis of this morass of companies is complicated. However, the burden of proof is on LLRG to show that the Trustee is somehow bound by the agreement, either through acquisition, assignment or some other legal mechanism. Currently, there is no evidence to demonstrate that Debtor is a party to the Contract, let alone the Trustee. As such this is a sufficient and compelling reason to deny the relief requested.

Even if LLRG was able to show that the Debtor was bound to the Contract, such a showing may not be legally sufficient. According to a line of cases, even if the Debtor is bound to the Contract the Trustee may not be compelled to arbitrate claims, which are either derived from the bankruptcy code, or derived from a creditor who was not a party to the arbitration agreement. See *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989). In the case before the Court the Trustee is asserting preference and fraudulent transfer claims pursuant to 11 U.S.C. §544(b), §547, and §548.

A leading case on the applicability of an arbitration clause to a chapter 11 trustee in the context of fraudulent transfer and preference actions is *OHC Liquidation Trust v. American Bankers Ins. Co. (In re Oakwood Homes Corp.)*, 2005 Bankr. LEXIS 429 (Bankr. D. Del. 2005). In *OHC* the trustee brought claims pursuant to 11 U.S.C. §544, §547, and §548. *OHC Liquidation* 2005 Bankr. LEXIS 429 at *2. The defendant sought to dismiss the adversary and compel the trustee to arbitrate his claims. In that case the trustee asserted that the claims brought on behalf of creditors of the estate are not subject to the arbitration provision, even if the debtor was. *Id.* at *6. The court ruled that no claim brought under 11 U.S.C. §544(b), §547, or §548 could be derived from the debtor. *Id.* at *8 and *13 (relying on *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*, 885 F.2d 1149 (3d Cir 1989)). Notably the court stated that §544, §547 and §548 claims "are creatures of statute, available solely for the benefit of creditors of

the debtor, whose rights the trustee enforces." *Id* at *13. Based on the fact that the claims are not derivative of the debtor the court held the claims did not have to be submitted to arbitration. *Id.* at *14.

LLRG's response to the *OHC* and *Hayes* line of cases is to suggest first and foremost that any analysis of the whether the action is debtor derived or creditor derived falls under a discussion of the "inherent conflict" between the bankruptcy code and arbitration as mandated by the second prong of the *Whiting- Turner* test.[D.E.28 at 7]. The result of this position is that it becomes part of the Trustee's burden to show that a claim falls outside the scope of the arbitration agreement; rather than LLRG's burden to show, in the first prong of the test, that the claims and parties are subject to the arbitration agreement.

The Court is unpersuaded by LLRG's position. Dictates of fairness, not to mention Eleventh Circuit precedent, require that the party moving to compel arbitration be the one to establish: (1) that there was a valid agreement; (2) it is enforceable; (3) it is enforceable against the opposing party; and (4) the claim or issue to be submitted to arbitration must be subject to the agreement. *Cmty. State Bank v. Strong*, 485 F.3d 597, 618-19 (11th Cir. 2007). Absent anyone of these factors the moving party, in this case LLRG, fails the first prong of the test as a matter of law.

LLRG has failed to establish the third and fourth requirements. LLRG has failed under the third requirement because it has not proved that the arbitration agreement is enforceable against the Debtor or the Trustee. Furthermore, LLRG has failed to establish that the claim or issue to be arbitrated is subject to the arbitration agreement. The arbitration agreement, even if enforceable against the Debtor and all Debtor derived claims, has not been shown to be enforceable against the Trustee on creditor or statutorily derived claims. Since fraudulent transfer and preference claims stem from the creditors or trustee powers granted within the bankruptcy code, these claims cannot be subject to arbitration unless the Trustee or the creditors have assented to the arbitration agreement. Therefore, as a matter of law the pursuit of non-

debtor derived claims fall outside of the scope of the arbitration agreement.

Based on the preceding discussion the Court is unable to grant to the motion to compel arbitration at this time as a matter of law. Further since the foregoing analysis is dispositive there is no need for the Court to examine the second step of the *Whiting-Turner* analysis.

In view of the above it is hereby

**ORDERED AND ADJUDGED** that the *Motion to Compel Arbitration* [D.E. 10] is **DENIED**.

###

Copies to:
James S Feltman
Paul J. Battista, Esq
Philip J. Landau, Esq.
LLRG